# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| EVELYN D. JOHNSON, ) | |
| ) | |
| Plaintiff, ) | Case No. 06 C 6448 |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| MICHAEL J. ASTRUE, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Evelyn Johnson seeks judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying Johnson's claim for disability insurance benefits ("DIB"). Johnson applied for DIB on January 8, 2004, alleging that arthritis and back pain had prevented her from performing substantial gainful employment since September 4, 2003. Her application was denied initially on April 9, 2004 and denied upon reconsideration on September 27, 2004. Johnson sought a hearing before an administrative law judge ("ALJ"), and a hearing was held on February 28, 2006. On March 22, 2006, the ALJ held that Johnson was not entitled to DIB, and the Appeals Council upheld the ALJ's decision on August 22, 2006, making the ALJ's decision the final determination of the Commissioner. Johnson filed this action on November 27, 2006. Johnson and the Commissioner filed cross motions for summary judgment.

## I. BACKGROUND

Johnson, who was 51 years old on the date of the ALJ hearing, had worked for the Chicago Transit Authority for twenty-six years, first as a bus driver and later as a supervisor doing clerical work. In September 2003, Johnson stopped working because, according to her, she was experiencing severe back pain when sitting or standing for long periods of time. Twice

after September 2003, Johnson attempted to return to work, but, in February 2004, she retired permanently because she felt she could not perform the job given her pain.

Beginning in June 2000, Johnson visited a chiropractor, Dr. David Krueger, to address her lower back and hip pain. Johnson returned to Dr. Krueger over the next several years. An x-ray revealed in November 2002 that Johnson had "degenerative disc disease." (R. 189.) With Dr. Krueger's supervision, Johnson underwent a regimen of physical therapy in late 2003 and early 2004. A September 2003 MRI revealed "minimal disc bulging with minimal disc desiccation." (R. 144.) But an EMG study in May 2004 was "unremarkable." (R. 148.) Johnson's physician, Dr. Fred Daniels, referred her to Dr. Charles Slack, an orthopedic surgeon. Dr. Slack reported in May 2004 that Johnson "has a low back derangement I feel is related to her degenerative lumbar disc and facet joint disease." (R. 140.) Dr. Slack expressed his expectation that Johnson's symptoms could improve with use of Celebrex and strengthening exercise. (*Id.*)

Johnson submitted to the ALJ a report from Dr. Krueger and medical records from Drs. Krueger, Daniels, and Slack. The ALJ also considered three reports from physicians appointed by the state agency. Dr. Chirag Patel briefly examined Johnson, and two other doctors completed residual functional capacity ("RFC") assessments based on reviewing records submitted by Johnson. At the hearing in February 2006, the ALJ heard testimony from Johnson, a medical expert, Dr. Chukwuemeka Ezike, and a vocational expert, Christopher Yep.

In his written decision, the ALJ determined that Johnson had "a severe combination of impairments of a history of breast cancer on the left with resulting mastectomy without recurrence, a history of chronic low back and neck pain, hypertension, anemia, and obesity." (R. 21.) Nonetheless, the ALJ concluded that Johnson retained the capacity to obtain substantial

gainful employment, and thus Johnson was not disabled as defined in the Social Security Act. (R. 22-25.)

## II. STANDARD

The court may perform only a limited review of the ALJ's decision and must affirm if it is supported by substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). Substantial evidence is more than a "scintilla of proof" but "requires no more than 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. The court will not reweigh the evidence or substitute its own judgment on the question of whether the claimant is disabled. *Id.* at 305-06.

## III. ANALYSIS

The Social Security regulations lay out a five-step analysis for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520. At step one, the ALJ looks to whether the claimant is currently performing substantial gainful employment. If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the ALJ determines whether the claimant has "any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). In order to qualify, the impairment must have lasted or be expected to last for a continuous period of at least twelve months. 20 C.F.R. § 404.1509. At step three, the ALJ compares the claimant's impairment to specific listings in the regulations. If the impairment corresponds with one of the listed impairments, the claimant will be deemed disabled. 20 C.F.R. § 404.1520(d). If the impairment does not meet one of the listed impairments, the ALJ must then make an RFC assessment, an evaluation of the claimant's ability to perform certain tasks despite her impairment, based on medical and other relevant evidence. The RFC is used in steps four and five. 20 C.F.R. §

404.1520(e). At step four, the ALJ determines whether, given the claimant's RFC, she is capable of performing her past relevant work. If so, the claimant is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant cannot perform past relevant work, the ALJ determines whether the impairment prevents the claimant from performing some other work which is available in the economy. 20 C.F.R. § 404.1520(g).

In this case, the ALJ determined that Johnson did have a severe impairment, that Johnson's impairment did not meet one of the impairments listed in the regulations, and that Johnson could not perform her past relevant work which the regulations classified as requiring a "medium" level of exertion. The ALJ then calculated Johnson's RFC based primarily on the testimony of Dr. Ezike and the RFC assessments of the state appointed doctors. The ALJ concluded that Johnson was capable of performing any work which the regulations characterized as "sedentary" and a restricted range of jobs characterized as "light work." *See* 20 C.F.R. § 404.1567. According to the two state doctor RFC assessments, Johnson could occasionally lift up to twenty pounds, frequently lift up to ten pounds, stand or walk about six hours in an eight-hour workday, sit with normal breaks for six hours in an eight-hour workday, and push or pull an unlimited amount. (Docs. 155, 198.) These assessments equal the physical exertion regulatory requirements for "light work" and exceed the requirements for "sedentary work." 20 C.F.R. § 404.1567. Dr. Ezike's assessment was slightly less positive. He opined that Johnson could occasionally lift only fifteen pounds and could sit for two to six hours out of an eight-hour workday. (R. 350.) Dr. Ezike explained that this meant, on some days, Johnson would only be able to sit for a maximum of two hours. (R. 352-53.) Yep, the vocational expert, testified that a number of unskilled jobs exist at the sedentary and light work levels in the regional economy for

which Johnson would be qualified. (R. 365.) Based on this analysis, the ALJ concluded that Johnson was not disabled.

Johnson makes a number of objections to the ALJ's decision. First, Johnson contends that the ALJ improperly gave short shrift to the opinion of her chiropractor, Dr. Krueger. Dr. Krueger completed his own RFC assessment, and he opined that Johnson had only a minimal capacity for physical exertion. According to Dr. Krueger, Johnson could sit for less than two hours in an eight-hour workday and stand for only one hour. (R. 299.) This RFC falls below the requirements for even sedentary work. In addition, Dr. Krueger noted that Johnson would likely miss up to three days of work per month. (R. 301.) Yep testified that the jobs he was considering would require Johnson to miss no more than one day per month. (R. 364.) The ALJ noted that Dr. Krueger's assessment was consistent with Dr. Ezike's testimony in some respects but, if believed, would mean that the ALJ must find Johnson to be incapable of performing any work.

The ALJ determined that he would assign "little or no weight" to Dr. Krueger's report because opinions by chiropractors are generally treated as lesser authority by the social security regulations. (R. 23 (citing 20 C.F.R. § 404.1513).) Johnson argues that Dr. Krueger's testimony should not have been rejected because Krueger—unlike the other doctors whose opinions were considered by the ALJ—had an extensive treating relationship with Johnson. Although the regulations permit the ALJ to consider a chiropractor's opinion in determining "the severity of the individual's impairment(s) and how it affects the individual's ability to function," *see* SSR 06-03p, the ALJ has discretion to determine the appropriate weight to be accorded to that opinion. *Humphries v. Apfel*, 99 C 1200, 2000 WL 574536, at * 6 (N.D. Ill. May 10, 2000) (citing *Walters v. Comm'r of Social Security,* 127 F.3d 525, 530 (6th Cir. 1997); *Diaz v. Shalala,*

59 F.3d 307, 313-14 (2nd Cir. 1995); *Griego v. Sullivan,* 940 F.2d 942, 945 (5th Cir. 1991)). Johnson asks the court to reweigh the evidence, but, because other medical evidence supported the ALJ's conclusion, the court may not question the ALJ's judgment.

Second, Johnson argues that the ALJ ignored the medical opinion of Dr. Patel which contradicted the ALJ's determination. "An ALJ may not ignore an entire line of evidence that is contrary to [his] findings." *Henderson ex rel. Henderson v. Apfel*, 179 F.3d 507, 514 (7th Cir. 1999). However, the court does not agree with Johnson's interpretation of the evidence. Johnson points to the following passage from Dr. Patel's report:

> [Johnson] states that her lower back pain is fairly localized, but lately she has had some radiation to the left side greater than the right side, with an electric shock and numbness feeling. *She is unable to ambulate or sit or stand in particular positions for prolonged periods of time.* She has full range of motion on examination today, although she said that an MRI report and EMG, which will be forwarded to the Bureau, is significant for a bulging disc and osteoarthritis.

(R. 153 (emphasis added).) Johnson argues that the ALJ ignored Dr. Patel's report because the italicized sentence quoted above directly contradicts the ALJ's findings but is not mentioned in his decision. Reading the passage in context, the court believes that Dr. Patel was summarizing Johnson's complaints, not stating a medical conclusion that Johnson did not have the physical capacity to sit or stand for prolonged periods. Dr. Patel met with Johnson for only fifteen minutes, and nothing in his report suggests a basis for such a medical conclusion. Even if Johnson accurately characterizes Dr. Patel's report, the ALJ considered Johnson's testimony that the pain prevented her from sitting for extended periods and Dr. Krueger's report which contradicted the other medical evidence. The ALJ did not ignore the evidence supporting Johnson's claim; he simply chose to credit other record evidence. And the ALJ need not evaluate every piece of evidence in his written opinion as long as it is clear that he considered the evidence contradicting his conclusion. *Henderson*, 179 F.3d at 514.

6

Third, Johnson argues that the ALJ, in making his RFC finding, did not account for additional impairments that were cited by Dr. Ezike including Johnson's obesity, right hip pain, degenerative joint disease, knee pain, and gastroesophegal reflux disease. This argument is not correct. Although the ALJ may not have mentioned all of these impairments specifically, the impairments were all part of the record reviewed by Dr. Ezike and the two state appointed physicians. The ALJ, for the most part, adopted the RFC findings of these doctors. Thus his findings took all of the impairments into account.

Fourth, Johnson argues that the ALJ's credibility determination was improper. Johnson had testified that she was in so much pain that she was unable to sit or stand for more than two hours at a time. Such an impairment would have disqualified Johnson from performing any work. However, in his decision, the ALJ concluded:

> After considering the evidence of record, <u>the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms</u>, but that the <u>claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible</u>.

(R. 23 (emphasis in original).) The ALJ gave several reasons for disbelieving Johnson's account of the severity of the pain—a lack of objective evidence of pain, the fact that Johnson was taking mostly over the counter medications, the fact that Johnson had received mostly routine treatment, and the fact that most of the treatment was from a chiropractor. These are all factors which the regulations permit the ALJ to consider in evaluating the intensity of a claimant's symptoms. *See* 20 C.F.R. § 404.1529(c). The ALJ's credibility determination is entitled to "special deference" and may only be overturned if "patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). The court cannot say that the ALJ was patently wrong in declining to credit Johnson's testimony; her account certainly contradicted the RFC determinations of several doctors who had evaluated the record.

Finally, Johnson argues that the ALJ made significant errors in the way he relied on the vocational expert's testimony. According to Johnson, the ALJ posed a hypothetical to Yep which did not include all of the relevant impairments. However, the omissions Johnson complains of appear to come mostly from Dr. Krueger's report or Johnson's own testimony. The court has already concluded that the ALJ properly refused to give weight to this evidence, so there was no error in excluding it from the hypothetical given to the vocational expert.

The ALJ relied on Yep's testimony in concluding that there were a sufficient number of jobs in the region which Johnson would still be able to perform. Yep listed three different categories of jobs, dispatcher, inspector, and cashier. According to Yep, there were 3,899 sedentary dispatcher jobs, 16,386 light and sedentary inspector jobs, and 86,508 light and sedentary cashier jobs. (R.25.) Johnson argues that the ALJ erred by considering the jobs in the light work category. The ALJ found that Johnson could only lift up to fifteen pounds occasionally, but light work requires occasionally lifting up to twenty pounds. However, the ALJ clearly noted in his decision that Johnson's abilities fell somewhere in between sedentary and light. He recognized that she would not be capable of performing all of the light work jobs, and his questioning of Yep reflected this limitation. Nonetheless, Yep testified that a significant number of jobs were available for Johnson, and the ALJ reasonably relied on this testimony. The parties appear to agree that Yep erred in including the job of dispatcher among the jobs that Johnson was capable of performing. However, no objection was made before the ALJ, and, in any event, the error was likely harmless because there were still thousands of jobs in the cashier and dispatcher categories for which Yep testified that Johnson was qualified.

## IV. CONCLUSION

For the reasons stated above, the ALJ's decision denying DIB is affirmed. Johnson's motion for summary judgment is denied, and the Commissioner's motion for summary judgment is granted.

ENTER:

                                                         /s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: November 2, 2010